# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

———————

**FERNANDO G. MARTINEZ,**

    Plaintiff,

v.　　　　　　　　　　　　　　　　　No. CIV 98-0168 BB/JHG

**ALBERTSON'S, STORE #907**
**JEFF HINKLE, Store Manager, and**
**TOM ELLIS, Assistant Store Manager,**
**Individually,**

    Defendants.


## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on Defendant's Motion for Summary Judgment, filed April 8, 1999 (Doc. No. 24).  The Court has reviewed the motion, the memoranda submitted by the parties, and the relevant authorities.  The Court finds that the motion is well taken and GRANTS summary judgment.

## I.  <u>BACKGROUND</u>

### A.  Facts and Procedural History

This is a Title VII, 42 U.S.C. Section 2000e and 42 U.S.C. Section 1981 action alleging national origin discrimination in the workplace at Albertson's Store No. 907 in Carlsbad, New Mexico.  Plaintiff, Fernando G. Martinez, is a Hispanic male who began employment with Albertson's in June, 1988.  In January of 1995, Plaintiff was transferred back to Carlsbad and was promoted to meat market manager.  As manager of the meat market, Plaintiff supervised a

number of employees including meat cutters and meat wrappers, and took responsibility of sales and quality control.

In August 1996, Plaintiff received a memorandum written by Jeff Hinkle, the store director, that outlined a number of concerns Mr. Hinkle had with Plaintiff's job performance. The memo specifically addressed labor costs, the condition of meat products in Plaintiff's department, sales figures, and personnel problems. Two months later, in October 1996, Mr. Hinkle drafted another memorandum to Plaintiff that addressed his continued concern over Plaintiff's failure to remedy the issues from the first memorandum, and also outlined additional personnel problems and pricing issues.

On May 24, 1997, Defendants demoted Plaintiff from his position as meat market manager to meat cutter. Plaintiff contends Defendants demoted him only for violating Albertson's' Code Dating Policy by transferring chickens from a refrigerator to a freezer after the chickens' expiration date had expired. Defendants maintain that they demoted Plaintiff for the transfer of outdated chickens in addition to the other reasons outlined in the August and October employment memoranda.

Approximately two months later, on July 24, 1997, Plaintiff went on disability leave for shoulder surgery. On August 29, 1997, Plaintiff filed a Charge of Discrimination with the New Mexico Human Rights Division and the EEOC, alleging that his demotion constituted discrimination on the basis of his Hispanic origin. Plaintiff also claimed that Albertson's targeted him for termination due to his temporary disability. The EEOC issued Plaintiff a Right To Sue Notice on November 17, 1997.

In mid January, 1998, after Plaintiff's leave of absence had expired without any word from Plaintiff, Mr. Hinkle notified Plaintiff that he had submitted an Employee Status Report indicating that Plaintiff had abandoned his job by violating company leave policy. After Plaintiff provided Defendants with a doctor's letter, however, Defendants reinstated Plaintiff as a meat cutter and allowed him to return as soon as he was physically able to perform his job. He returned to work in July, 1998.

Plaintiff commenced this suit on February 10, 1998. In his current suit, Plaintiff alleges he suffered national origin discrimination, when store director, Jeff Hinkle, demoted him from his position as Meat Marker Manager, and when he was threatened with termination, both in violation of Title VII of the Civil Rights Act and 42 U.S.C. Section 1981. Plaintiff further alleges that he suffered retaliation by Mr. Hinkle and Mr. Ellis when he attempted to return to work following the filing of his EEOC complaint and surgery and instead received a Notice of Termination in violation of 42 U.S.C. Section 1981. Defendants' Motion for Summary Judgment on these claims is currently before the Court.

## B. Summary Judgment Standard

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *See*, Akin v. Ashland Chemical Co., 156 F.3d 1030, 1033 (10th Cir. 1998) (citing Celotex v. Catrett, 477 U.S. 317, 322-23 (1986). The movant bears the burden of establishing the absence of a material question of fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157

(1970). The movant may meet this burden by showing that there is an absence of evidence to support the non-moving party's case. Celotex Corp., 447 U.S. at 324.

Once the movant meets his burden, the burden then shifts to the non-movant to demonstrate a genuine issue for trial on a material matter. Bacchus Indus., Inc., v. Arvin Indus., Inc., 939 F.2d 887, 890-891 (10th Cir. 1991). The non-movant party may not rest on its pleadings, but must set forth specific facts showing there is a genuine issue for trial as to those matters for which it carries the burden of proof. Celotex Corp., 447 U.S. at 324. A mere scintilla of evidence in the non-moving party's favor is not sufficient to withstand the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Thus, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-252. The facts must be construed in favor of the non-movant and the court must consider inferences that can be drawn from those facts tending to show triable issues. Applied Genetics Int'l., Inc. V. First Affiliated Secl, Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). The Court will consider Defendants' motion in light of the above standard.

## II. DISCUSSION

### A. Racial Discrimination

Plaintiff's initial claim is that Defendants discriminated against him on the basis of his race in violation of Title VII, 42 U.S.C. 2000e, and 42 U.S.C. Section 1981, by demoting him and threatening him with termination. For summary judgment purposes, Section 1981 and Title VII claims are both analyzed under the burden-shifting scheme originally developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and later refined in Texas Dep't of Community

Affairs v. Burdine, 450 U.S. 248 (1982).[1]  The McDonnell Douglas framework provides a three stage analysis.

First, the plaintiff must prove by a preponderance of the evidence, a prima facie case of discrimination.  McDonnell Douglas Corp., 411 U.S. at 802.  By establishing a prima facie case, the plaintiff creates a presumption that the employer discriminated against the employee.  Burdine, 450 U.S. at 254.  Second, after the plaintiff establishes his prima facie case, the burden shifts to the defendant to rebut the presumption of discrimination by articulating a legitimate nondiscriminatory reason for the employee's treatment.  Id.  Finally, in the third stage, the plaintiff is afforded a full and fair opportunity to show that the reasons proffered by defendant for the employment action were in fact a pretext for unlawful discrimination.  Id.

With respect to the discriminatory demotion, the Court finds that Plaintiff fails the third part of the McDonnell Douglas test -- he is unable to demonstrate that Defendants' non-discriminatory reason for the demotion was a pretext for unlawful discrimination.  The Court further finds that with respect to the threatened termination, Plaintiff fails to establish a prima facie case.

1.  Discriminatory Demotion

a.  *Prima Facie Case*

In order to establish a prima facie case for a discriminatory demotion, Plaintiff must show that he was: "(1) within the protected ... group; (2) adversely affected by the defendant's

---

[1]Although in McDonnell, the Court's analysis only involved a Title VII claim, subsequent courts have applied this scheme to §1981 claims as well.  See Patterson v. McLean Credit Union, 491 U.S. 164, 186 (1989) (adopting McDonnell Douglas framework for §1981);  Thomas v. Denny's Inc., 111 F.3d 1506, 1509-10 (10th Cir. 1997) (elements of plaintiff's case and allocation of burdens are the same under Title VII and Section 1981).

employment decision; (3) qualified for the position at issue; and (4) replaced by a person outside the protected group." Hooks v. Diamond Crystal Specialty Foods, Inc., 997 F. 2d 793 (10th Cir. 1993) (quoting Branson v. Price River Coal Co., 853 F.2d 768, 770 (10th Cir. 1988) (abrogated in part on other grounds, Buchanan v. Sherill, 51 F.3d 227, 229 (10th Cir. 1995)) ( McDonnell Douglas test for prima facie elements of a discriminatory discharge claim applies to discriminatory demotion claim).

Defendants concede that Plaintiff has demonstrated three of the four elements outlined in Hooks: first, Plaintiff is Hispanic; second, Plaintiff was adversely affected by Defendants' employment action when they demoted him from his supervisory position; third, Plaintiff was replaced by Mr. Kenneth Roundtree, a non-minority. Defendants argue, however, that Plaintiff cannot show that he was qualified for the meat market manager position and thus does not meet the third part of the prima facie test for discriminatory demotion. As evidence of Plaintiff's lack of qualification for the position, Defendants point to the two warning letters sent to Plaintiff expressing Mr. Hinkle's dissatisfaction with an array of issues as well as Plaintiff's violation of Albertson's' Code Dating Policy.

The Court finds that the reasons proffered by Defendants sufficiently demonstrate a non-discriminatory explanation for Plaintiff's demotion. The only wrinkle is the difficulty in identifying when to consider Plaintiff's work related problems. Defendants argue that the Plaintiff fails the *prima facie* case because the evidence they offer establishes that Plaintiff was not qualified for the position. To support their claim Defendants cite an Eighth Circuit case, Miller v. Citizens Sec. Group, 116 F.3d 343 (8th Cir. 1997), for the proposition that in order for Plaintiff to

demonstrate that he was "qualified for the position," he must show that he was "performing his job at a level that met his employer's legitimate expectations." Id.[2]

The Tenth Circuit appears to have applied a similar standard to that of Miller in Trujillo v. Grand Junction Regional Center, 928 F.2d 973 (10th Cir. 1991). In Trujillo, Defendant terminated the plaintiff, a Hispanic female, for her failure to properly supervise other employees. After finding that the plaintiff failed in her duties of supervision, the District Court concluded the plaintiff did not establish a prima facie case of discrimination because she was unqualified for the position from which she was terminated. The Tenth Circuit affirmed the District Court's ruling, and stated: "[s]ince Trujillo did not satisfy the initial burden of proof, we are convinced she is not entitled to relief under Title VII." Trujillo, 928 F.2d at 977. Thus, the Tenth Circuit endorsed the principle that as a challenge to the plaintiff's prima facie case, the defendant may proffer evidence that the plaintiff was discharged because she was not satisfactorily performing her job and not because of his or her race.

The difficulty with applying Trujillo to the case at bar is that it would create an awkward analytical framework by failing to distinguish between the plaintiff's burden to establish a prima facie case and his attempt to attack the employer's explanation as pretext.[3] Subsequent Tenth

---

[2]Other courts have adopted a similar approach when analyzing a plaintiff's prima facie case in a discriminatory discharge claim and have required that the plaintiff offer evidence that he was qualified for the job. See Flowers v. Crouch-Walker Corp., 552 F.2d 1277, 1282 (7th Cir. 1977) ("Attributing a discharge to racial discrimination without any evidence that plaintiff was meeting normal job requirements would be unwarranted and unfair."); Ransome v. Bowling, 851 F. Supp. 204, 209 (D.Md. 1993) (Plaintiff fails to make out a prima facie case of discrimination because she came forward with no probative evidence of satisfactory job performance).

[3]Generally, it is not until the plaintiff employee establishes a prima facie case that it then becomes the employer's burden to produce a legitimate, nondiscriminatory reason for the discharge. Burdine, 450 U.S. at 254. In the instant case, by allowing Defendants to challenge Plaintiff's prima facie case by proving that Plaintiff was not qualified for the position, the Court would place itself in the undesirable position of deciding the pretext case prematurely. The Court's analysis of the third prong of Plaintiff's prima facie case would simultaneously trigger a pretext analysis, thereby merging the first and second stages of the McDonnell Douglas test and, conceivably,

Circuit opinions offer a more balanced approach to analyzing the potential prima facie -- pretext problem. *See* <u>MacDonald v. Eastern Wyoming Mental Health Center</u>, 941 F.2d 1115 (10th Cir. 1991); *See also* <u>Denison v. Swaco Geolograph Co.</u>, 941 F.2d 1416 (1991).

In <u>MacDonald</u> the Tenth Circuit examined an age discrimination ruling which held that the plaintiffs had failed to make out a prima facie case for age discrimination. The district court based its opinion on the defendant's nondiscriminatory explanations for the plaintiffs' termination. The Tenth Circuit rejected this approach and cautioned that "[s]hort circuiting the analysis at the prima facie stage frustrates a plaintiff's ability to establish that the defendant's proffered reasons were pretextual . . ." <u>MacDonald</u>, 941 F.2d at 1119. The plaintiff has a full and fair opportunity to demonstrate pretext only when the prima facie and pretext stages of the analysis are separated. With respect to the third element of the prima facie case, the Court concluded that:

> a plaintiff may make out a prima facie case of discrimination in a discharge case by credible evidence that she continued to possess the objective qualifications she held when she was hired, or by her own testimony that her work was satisfactory, even when disputed by her employer, or by evidence that she had held her position for a significant period of time. <u>Id.</u>, at 1121 (citations omitted).[4]

Therefore, this Court finds that under the Tenth Circuit's holding in <u>MacDonald</u>, an employer's explanation for discharge should be evaluated under the pretext analysis rather than at the prima facie case stage.[5]

_____

leaving out the third stage.

[4]*See also* <u>Denison</u>, 941 F.2d at 1420 (the employee meets the burden of production on the prima facie case element of satisfactory work "by introducing some evidence of good performance.")

[5]The Court notes that this is the approach taken by a majority of the Circuits. In addition to the Third, Fifth and Seventh Circuit opinions cited in <u>MacDonald</u>, 941 F.2d at 1119-20, *see also* <u>Clark v. Coats & Clark, Inc.</u>, 990 F2d 1217 (11th Cir. 1993); <u>Kennel v. Dover Garage, Inc.</u>, 816 F.Supp 178 (E.D.N.Y. 1993) *aff'd*, 9 F3d 1536 (2d Cir. 1993).

With this framework in mind, this Court finds that Plaintiff has presented enough evidence of the type described in <u>MacDonald</u> to establish his prima facie case. In January 1995 Defendant promoted Plaintiff from meat cutter to meat manager, and, over the next 29 month period as meat manager, he continued to have the same objective qualifications that he had when he was first promoted. Also, Plaintiff testified in his deposition that because of his commitment to the job and the hard work he puts in, some of the employees called him "Superman." (Pl.'s Dep. at 84). Plaintiff further testified that, even after Defendants demoted him, he still received a bonus for hitting his quarter projections. (<u>Id.</u> at 145) This Court finds from the testimony of Plaintiff, as well as the other evidence, that Plaintiff has established a prima facie case of discriminatory demotion.

b. *Nondiscriminatory Explanation*

Once the plaintiff has established the prima facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the employee's treatment. <u>Burdine</u>, 450 U.S. at 254. Defendants provide sufficient evidence that they demoted Plaintiff because he did not satisfy the level of job performance expected of him as meat market manager. Since "[d]ischarging an employee for failure to adequately perform job duties is a legitimate, nondiscriminatory reason," the Court finds that Defendants offer a justifiable nondiscriminatory explanation for their employment decision. <u>Duart v. FMC Wyoming Corp.</u>, 72 F.3d 117, 120 (10th Cir.1995).

In support of their argument, Defendants first point to the two written notices from Mr. Hinkle to Plaintiff expressing Mr. Hinkle's significant concerns with several areas of Plaintiff's job performance. These memoranda, dated August 8, 1996 and October 1, 1996, specifically address

problems relating to: labor cost, condition of the meat products in his department, sales figures, personnel problems, and, finally, the need for Plaintiff to implement prompt changes and make appropriate feedback. Plaintiff does not dispute that he received Defendants' Exhibits C and D,[6] instead, Plaintiff attempts to elude the criticism by either critiquing Albertson's' policies, or by ignoring the problems expressed in these memoranda. Plaintiff admits, for example, that he did not post price signs in the meat section as requested by Defendants, and defends himself by explaining that Albertson's charged higher prices than competitor stores. (Pl.'s Aff. ¶¶ 33, 35; Pl.'s Dep. at 148). Further, in response to the complaints that none of the employees in the meat department liked him, Plaintiff said "I don't care, I was there to do my job for Albertson's, not them." (Pl.'s Dep. at 128). Even though he criticized or ignored Defendants' concerns, Plaintiff admitted that Defendants' expectations, many of which were expressed in the two memoranda, were legitimate ones. (Pl.'s Dep. at 43-47).

As a second element of their decision to demote Plaintiff from meat market manager to meat cutter, Defendants point to Plaintiff's violation of the Code Dating Policy, when he placed chickens into a freezer after their expiration date passed. Plaintiff concedes that he transferred the

---

[6]Although Plaintiff does not dispute he received the memoranda from Defendants, he does object to their attachment to Defendants' Motion, asserting they are inadmissible as hearsay. However, business records, which normally would be admissible at trial under the hearsay exception set forth in Fed.R.Evid. 803(6), may be considered if they are authenticated by a person through whom the exhibits could be admitted into evidence. *See* Duplanits v. Shell Offshore, Inc., 948 F.2d 187, 192 (5th Cir. 1991). Here, Defendant properly authenticates the Exhibits by providing an Affidavit of Jeff Emarine (Doc. 27, Exh. A) stating that the warnings have been kept in Defendant's personnel file, the files are kept in the course of regularly conducted business activity, it is Defendant's regular practice to make contemporaneous written record of disciplinary warnings given to employees, and it is one of his duties as Store Director at Albertson's to maintain disciplinary records in employees' personnel files. Therefore, the Court finds it is appropriate to consider these exhibits. *See* Berger v. Brannan, 172 F.2d 241 (10th Cir. 1949) (exhibit of sales data accompanied by affidavit of person who prepared it stating that it correctly reflected all pertinent items in defendant's books formed the basis for a summary judgment for plaintiff); *See also* Wright v. Wyandotte County Sheriff's Dept., 963 F. Supp. 1029, 1035 (D. Kan. 1997) (documents from deputy sheriff's personnel file could be considered in support of sheriff's department's motion for summary judgment on deputy's employment discrimination claim).

chickens after their expiration date had passed[7], and acknowledges that he had read and signed a memorandum of Albertson's that set forth their policy of code dating meats. (Id. at 35; Doc 25 Exh. B). Plaintiff's only response to this incident is to try to avoid the brunt of the criticism with his explanation that he did not *intentionally* transfer the expired chickens, he merely did not check the dates of the chickens before transferring them to the freezer. (Pl.'s Dep. at 133, 136, 138) Whether Plaintiff intentionally transferred the chickens after their expiration date expired or transferred them accidentally, he clearly violated the Code Dating Policy.

The Court finds that, since any one of the employment problems individually might have been sufficient to provide an explanation for the demotion, the above evidence, considered as a whole, provides ample support of a legitimate nondiscriminatory explanation for Defendants' decision to demote Plaintiff.

### c. *Rebuttal of Nondiscriminatory Explanation*

Once the employer articulates a nondiscriminatory explanation for its employment decision, the plaintiff must be afforded a full and fair opportunity to show that the reasons offered by the defendant for the employment action were actually a pretext for unlawful action.

Plaintiff attempts to demonstrate pretext through two means. First, he tries to make a case for disparate treatment on the grounds that similarly situated non-Hispanic employees were not subject to the same employment action for violating work place requirements. Second, he tries to show pretext by pointing to three specific examples of Defendants' discriminatory

---

[7]Plaintiff does argue, however, about the *date* this occurred. The incident is documented as occurring on May 21, 1997 which would have been four days past the chicken expiration date of May 17. Plaintiff argues that he transferred the chickens on May 19. Either way, Plaintiff transferred the chickens after their expiration date had expired.

behavior in order to show that Defendants' explanation is only an attempt to mask their underlying discriminatory motive. The Court is not persuaded by Plaintiff's efforts to demonstrate that Defendants' explanation is pretext for racial discrimination. The Court considers both of Plaintiff's arguments.

In a disparate treatment case, an employee can create an inference of pretext by showing that similarly situated non-minority employees received disparate treatment. Elmore v. Capstan, 58 F.3d 525, 530 (10th Cir. 1995). Plaintiff contends he was subjected to disparate treatment because similarly situated non-Hispanic employees were not subject to the same employment action for violating work place requirements. Plaintiff restricts the "disparate treatment" argument to the work place requirement that employees not violate the Code Dating Policy. (Doc. 1 at ¶ 15; Doc. 26 at 16-17). In order for Plaintiff to assert a claim of disparate treatment in a work rules case, "the plaintiff must show that he was treated differently than other *similarly situated* employees who violated work rules of *comparable seriousness*." Aramburu v. The Boeing Co., 112 F.3d 1398, 1404 (10th Cir. 1997) (emphasis added). "Similarly situated" employees are those employees "who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." Id. (citation omitted).

According to Plaintiff, he was unaware of any of Albertson's' other employees violating Albertson's' code dating policies while he was manager. (Pl.'s Dep at 58). After his demotion, however, Plaintiff alleges he witnessed a number of code dating violations by Joann Taylor, Shauna Riley, Mickey Jackson, Kino Gonzales, and Kenneth Roundtree. (Id. at 59,60). Four out of the five employees Plaintiff names worked under him in the meat market: Joann Taylor was a "wrapper," Kino Gonzales and Mickey Jackson were both "cutters," and Shauna Riley worked in

the Meat Deli. (Id. at 36). These four employees did not deal with the same supervisor as Plaintiff. Even more significantly, because these employees had no management responsibilities, it is not apparent, and Plaintiff does not allege, that they were subject to the same standards governing performance. For the above reasons the Court finds that these four employees are not similarly situated to Plaintiff. This leaves only Kenneth Roundtree as a possible comparable employee for the purpose of the disparate treatment analysis.

Plaintiff fails to produce evidence to a support a finding that Defendant, Mr. Hinkle, subjected him to different standards than Mr. Roundtree because of Plaintiff's race. Mr. Roundtree, a Caucasian male, succeeded Plaintiff as meat market manager. Mr. Roundtree, therefore, reported to the same supervisor and was subject to the same discipline and evaluation standards as Plaintiff. (Id. at 193). The question of whether the employees being compared report to the same supervisor, however, is only one element in determining whether employees are similarly situated. "A court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated." Aramburu, 112 F.3d at 1404 (citing David v. City and County of Denver, 101 F.3d 1344, 1359-60 (10th Cir. 1996)). Plaintiff's allegations that Mr. Roundtree violated the code dating requirements without being demoted are insufficient to prove disparate treatment. For Plaintiff, the code dating violation was only one of several employment problems that he had created for Defendants. As mentioned previously, Plaintiff, himself, limits his disparate treatment argument to the code dating policy and it is for this reason that his argument fails. Defendants did not fire Plaintiff simply because of the code dating violation alone. While Plaintiff's code dating violation may have been the final straw,

Defendants had a record of Plaintiff's other problems. The two memoranda that Mr. Hinkle sent to Plaintiff clearly evidence Defendants' concern with Plaintiff's performance as a meat market manager and Plaintiff's inability to successfully meet healthy sales figures, maintain reasonable labor costs, and manage the various personnel responsibilities. Plaintiff, himself, explained that when Defendants demoted him they told him that it was their disappointment with his labor costs and the decline of his earnings as well as the code violation issue that led to the demotion. (Pl.'s Dep. 144-45)

Therefore, even if the Court accepted the allegations that Mr. Roundtree, like Plaintiff, violated store code dating policy, Plaintiff fails to present any evidence or indication that Mr. Roundtree had a similar employment history with regard to the list of other serious complaints. He does not, for that matter, offer any evidence that Mr. Roundtree was ever written up for any work violation or management problems at all. Even though it is true that Mr. Roundtree is a Caucasian and Defendants did not demote him for code dating violations, there is no evidence before this Court that Mr. Roundtree Plaintiff's other troubling work history. Thus, there is no evidence he was similarly situated. The Court finds that Plaintiff fails to make a sufficient showing of disparate treatment to establish a genuine issue of material fact that would preclude summary judgment.

In addition to his disparate treatment argument, Plaintiff also offers three examples of Defendants' discriminatory behavior that allegedly prove that Defendants' nondiscriminatory explanation for the demotion is actually a pretext for racial discrimination. Plaintiff explains that Mr. Hinkle discriminated against him by: (1) telling him to get a haircut, (2) constantly harassing and criticizing his management of the meat market, and (3) refusing to socialize with him. The

Court finds that Plaintiff fails to provide any evidence of discrimination because the examples he mentions are either unsupported by the evidence or do not suggest discriminatory behavior.

Plaintiff first points to Mr. Hinkle's comment "[w]hy don't you get a haircut?" as evidence of racial discrimination. (Pl.'s Dep. at 100, 102). The Court is unconvinced that this comment demonstrates racial discrimination. Plaintiff admitted that he was the only male employee at the store with hair covering his ears and that he thought that Mr. Hinkle liked the "G.I. Joe" look. (Id. at 118). Besides citing this as an example of racial discrimination, Plaintiff provides no explanation of how or why it is racial discrimination. It may well represent a conservative view of appropriate men's hair styles or a job hygiene issue, but it is not equivalent to racial discrimination.

As further evidence of racial discrimination, Plaintiff explains that Mr. Hinkle constantly harassed him and "cussed" him out. (Id. at 108, 116). Once again, besides citing this as an example of racial discrimination to support his pretext argument, Plaintiff has failed to provide any explanation of why this should be interpreted as racial discrimination. To the contrary, his deposition provides a compelling account of personality conflict with Mr. Hinkle. In his deposition, Plaintiff explained: "I mean, that guy was constantly on my back. I mean, it's – I never saw any discrimination as far as – I mean the Anglos or the black people. *I mean, he just went after me – I mean, just after me*." (Pl.'s Dep. 112) (emphasis added). Later, Plaintiff explained that Mr. Hinkle never bothered Caucasian or Hispanic managers in other departments even when their revenues were down. (Id. at 116). Plaintiff, himself, appears unsure of the reason for the conflict with Mr. Hinkle, and he suggests at one point in the deposition that Mr. Hinkle might not like him because he was too short. (Id. at 117). While Plaintiff's description of

his work environment does provide an indication of a personality conflict between himself and Mr. Hinkle, it does not sustain a finding of racial discrimination: "[a]n animus not related to [a plaintiff's] ancestry, such as a personality conflict with [a supervisor], is not evidence of improper discrimination." <u>Arambu v. The Boeing Co.</u> 112 F.3d, 1398, 1406 (10th Cir. 1997).

Finally, as evidence of Mr. Hinkle's racial discrimination, Plaintiff suggests that Mr. Hinkle held unannounced meetings with Caucasian managers in his office and did not invite Plaintiff. (Doc. 26 at 7-8). Despite this contention, Plaintiff's deposition fails to support such a claim. Instead of demonstrating Mr. Hinkle's attempt to restrict meetings to the Caucasian managers, Plaintiff's testimony suggests exactly the opposite. Plaintiff described how David Franco and Ray Garcia, both Hispanic managers, would sit and socialize for hours in Mr. Hinkle's office. (Pl.'s Dep. at 120). Plaintiff also explained that Mr. Hinkle would ask him "[w]hy don't you spend time with me in this office?" and repeatedly invite him over to his house to have a drink. (<u>Id.</u> at 119, 120). Plaintiff was free to decline these offers, as he did. Nonetheless, the Court finds no evidence of racial discrimination in either the offers or Plaintiff's rejection of the offers.

In summation, the Court finds that Plaintiff is unable to provide any evidence of disparate treatment or racial discrimination by Defendants, and therefore fails to demonstrate that the legitimate nondiscriminatory explanation for Plaintiff's demotion was a pretext for racial discrimination. For this reason, the Court finds that summary judgment in favor of Defendants is appropriate.

2.  Discriminatory Threatened Termination

In addition to Plaintiff's racial discrimination claim based on his demotion, Plaintiff also claims that Defendants discriminated against him on the basis of race in violation of Title VII, 42 U.S.C. 2000e and 42 U.S.C. Section 1981, by threatening him with termination.  The Court finds that Plaintiff fails to establish a prima facie case for discrimination.

In order to establish a prima facie case for a discriminatory threatened termination, Plaintiff must show that he was: (1) a member of the protected group, (2) adversely affected by Defendant's employment decision, and (3) Defendants' decision was motivated by the protected class characteristic.[8]

Plaintiff, a Hispanic male, clearly satisfies the first part of the prima facie case.  He cannot show, however, that Defendants' employment decision adversely affected him.  Plaintiff went on disability leave from Albertson's in July of 1997.  Through January of 1998, Defendants received no contact from Plaintiff.  They therefore submitted an Employee Status Report indicating that Plaintiff had abandoned his job.  When Plaintiff learned of this and provided Defendants with a doctor's note explaining the absence, Defendants reinstated Plaintiff to the position he had before

---

[8]*See* Sanchez v. Denver Public Schools, 164 F.3d 527, 531 (10th Cir. 1998).  The Tenth Circuit has not specifically addressed the elements of a prima facie case for discriminatory *threatened* termination.  However, in McDonnell Douglas and subsequent cases the Court has made it clear that the prima facie case articulated in McDonnell Douglas cannot be used by rote but should be adapted to fit the varying facts of discrimination cases. McDonnell Douglas, 411 U.S. at 802; Burdine, 450 U.S. at 253-54 n. 6.  The initial burden of proving the prima facie case is "not onerous," Burdine, at 253.  The plaintiff satisfies the burden by showing that the actions taken by the employer, if such actions remain unexplained, are more likely than not based on a discriminatory criterion illegal under the Act.  Furnco Construction Corp. v. Waters, 438 U.S. 567, 576 (1978).  The test articulated above meets this standard.

17

he took his medical leave.[9]  When Plaintiff took his leave from Albertson's he was a meat cutter –

the same position he had when he returned.  Other than the fact that the events took place, they

appear to have had no significant legal consequences.

The Supreme Court recently provided the following definition: conduct is adverse

employment if it "constitutes a significant change in employment status, such as hiring, firing,

failing to promote, reassignment with significantly different responsibilities, or a decision causing

significant change in benefits."  Burlington Industries v. Ellerth, 524 U.S. 742 (1998).  The Tenth

Circuit, rejecting the approach of other Circuits, has defined "adverse employment action"

liberally,  *See* Gunnell v. Utah Valley State College, 152 F.3d 1253, 1264 (10th Cir. 1998);

Jeffries v. State of Kansas, 147 F.3d 1220, 1232 (10th Cir. 1998) and takes a "case by case

approach."  Jeffries, 147 F.3d at 1232.  However, even with the benefit of this more liberal

approach, Plaintiff is unable to demonstrate that there was any type of adverse impact from the

series of events that took place.

In Plaintiff's Response Memorandum, Plaintiff argues that, for an employee, the shift from

leave of absence to termination "substantially affects his rights to union protection, membership,

bumping rights on return, tenure status and coverage through medical insurance programs."

(Doc. 26 at 21)  While these are indeed *possible* consequences for an employee, Plaintiff fails to

provide any evidence that he in fact suffered any of these effects.  Plaintiff does not meet the

burden of establishing his prima facie case because he provides no evidence of an adverse effect.

---

[9]In Plaintiff's Response Memorandum at 4, he suggests that he was fired as manager and then reinstated as a meat cutter.  The Court finds that record firmly indicates that this was not the sequence of events.  Defendants demoted Plaintiff in May 1997, Plaintiff took a medical leave in June 1997 and then returned to his demoted position in June 1998.  Plaintiff, himself, contradicts the above suggestion: "when I got back from my surgery . . . I was demoted already . . ."  (Pl.'s Dep. at 145).

This Court finds that Defendants' employment actions did not adversely affect Plaintiff, so Plaintiff cannot establish a prima facie case of racial discrimination by threatened discharge. Therefore, summary judgment for Defendants is appropriate.

## B.  Retaliation

Plaintiff also alleges that he suffered retaliation by Defendants when he attempted to return to work following the filing of his EEOC complaint and his surgery and instead received a Notice of Termination in violation of 42 U.S.C. Section 1981.  Again, although Plaintiff's claim is under Section 1981, the claim is analyzed under the same burden-shifting scheme developed in McDonnell Douglas.[10]  The Court finds that Plaintiff is unable to show the second element of his prima facie case and cannot, therefore, prove wrongful retaliation.

In order to establish a prima facie case for wrongful retaliation, Plaintiff must show that: "(1) he engaged in protected opposition to statutorily prohibited discrimination; (2) he was subjected to an adverse employment action subsequent to or contemporaneous with his protected opposition; and (3) a causal connection exists between the employer's adverse employment action and the employee's protected activity."  Trujillo v. University of Colorado Health Sciences Ctr., 157 F.3d 1211, 1215 (10th Cir. 1998).  Defendants concede that Plaintiff meets the first part of the test: Plaintiff engaged in a protected activity when he filed the EEOC charge.  Defendants argue, however, that Plaintiff cannot show any indication that he suffered adverse employment action as a result the filing.

Plaintiff suggests two ways in which he suffered adverse employment action:  "the Plaintiff's unjustified termination and subsequent demotion."  (Doc. 26 at 21).  First, Plaintiff's

---

[10]See supra, note 1.

argument that Defendants demoted him because of his EEOC filing unquestionably fails. Defendants demoted Plaintiff in May of 1997, two months before Plaintiff took his medical leave, and three months before he filed his charge of discrimination with the EEOC. Defendants could not have retaliated against Plaintiff with a demotion from meat market manager to meat cutter because he had *already* been demoted.

Second, mirroring the above analysis of racial discrimination by threatened termination, Plaintiff fails to offer any evidence that he was adversely affected by Defendants' submission of an Employee Status Report indicating that Plaintiff had abandoned his job. This "termination" was cleared up as soon as Plaintiff contacted Defendants with the letter from the Doctor explaining Plaintiff's absence. Defendants reinstated Plaintiff to the position he had before he took his medical leave. Plaintiff fails to provide any evidence that the status report, indicating that he had abandoned his job, had any adverse ramifications for him. The Court finds that Plaintiff fails to make a prima facie case of retaliatory adverse action.

## ORDER

For all the reasons stated above, this Court finds that Plaintiff fails to show that Defendants' legitimate nondiscriminatory explanation of Plaintiff's demotion was a pretext for unlawful discrimination. Further, because Plaintiff fails to establish any adverse employment action, he is unable to make the prima facie case for either the threatened termination discrimination claim or the threatened discharge retaliation claim. Therefore, summary judgment is appropriate.

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (Doc. 24) be, and hereby is, GRANTED.

Dated at Albuquerque this 6th day of October, 1999.


BRUCE D. BLACK
United States District Judge


**Attorneys:**

**For Plaintiff**
Donna L. Dagnall
Dagnall, Rames & Thomas
1012 Lomas Boulevard, Northwest
Albuquerque, New Mexico 87102

**For Defendant**
Glenn A. Beard
Rodey, Dickason, Sloan, Akin & Robb, P.A.
P.O. Box 1888
Albuquerque, New Mexico 87103